01

02

03

04

05

06
07

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

08  JILL ELAINE VAN SKIKE,                    )
                                             )   CASE NO. C12-1701-MJP-MAT
09          Plaintiff,                        )
                                             )
10      v.                                    )   REPORT AND RECOMMENDATION
                                             )   RE: SOCIAL SECURITY
11  CAROLYN W. COLVIN, Acting                 )   DISABILITY APPEAL
    Commissioner of Social Security,          )
12                                            )
            Defendant.                        )
13  _____ )

14          Plaintiff Jill Van Skike proceeds through counsel in her appeal of a final decision of

15  the Commissioner of the Social Security Administration (Commissioner). The Commissioner

16  denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental

17  Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having

18  considered the ALJ's decision, the administrative record (AR), and all memoranda of record,

19  the Court recommends that this matter be reversed and remanded for further proceedings.

20  / / /

21  / / /

22  / / /

REPORT AND RECOMMENDATION
PAGE -1

01        **FACTS AND PROCEDURAL HISTORY**

02        Plaintiff was born on XXXX, 1985.[1]   She has a high school diploma, and has

03  previously worked as a dishwasher and fast-food worker.  (AR 178-181, 188, 192.)

04        On June 2, 2009, Plaintiff filed applications for SSI and DIB.  (AR 125-29.)  Those

05  applications were denied initially and on reconsideration, and Plaintiff timely requested a

06  hearing. (AR 60-63, 67-73.)

07        On January 25, 2011, ALJ Marguerite Schellentrager held a hearing, taking testimony

08  from Plaintiff and a vocational expert.  (AR 26-55.)  On March 18, 2011, the ALJ issued a

09  decision finding Plaintiff not disabled.  (AR 9-20.)  Plaintiff timely appealed.  The Appeals

10  Council denied Plaintiff's request for review on August 6, 2012 (AR 1-3), making the ALJ's

11  decision the final decision of the Commissioner.  Plaintiff appealed this final decision of the

12  Commissioner to this Court.

13        **JURISDICTION**

14        The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §

15  405(g).

16        **DISCUSSION**

17        The Commissioner follows a five-step sequential evaluation process for determining

18  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it

19  must be determined whether the claimant is gainfully employed.  The ALJ found Plaintiff not

20

21        _____

          [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule
    of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic
22  Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United
    States.

REPORT AND RECOMMENDATION
PAGE -2

01   engaged in substantial gainful activity since October 28, 2008, the alleged onset date.  (AR

02   11.)  At step two, it must be determined whether a claimant suffers from a severe impairment.

03   The ALJ found that Plaintiff's status post left shoulder fracture and surgery, obesity, and

04   borderline intellectual functioning were severe impairments.  (AR 11-12.)  Step three asks

05   whether a claimant's impairments meet or equal a listed impairment.  The ALJ found that

06   Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 12-13.)

07        If a claimant's impairments do not meet or equal a listing, the Commissioner must

08   assess residual functional capacity (RFC) and determine at step four whether the claimant has

09   demonstrated an inability to perform past relevant work.  The ALJ found Plaintiff capable of

10   performing light work, but she is limited to lifting 5-10 pounds (no overhead) with her left

11   arm.  The ALJ placed no restrictions on Plaintiff's use of her right arm.  As to mental

12   limitations, the ALJ found that Plaintiff is capable of performing unskilled manual labor, and

13   is limited to simple, repetitive tasks.  The ALJ found that Plaintiff can accept instructions

14   from her supervisors and can interact with co-workers and the public.  With that assessment,

15   the ALJ found Plaintiff capable of performing her past work as a kitchen helper and fast-food

16   worker.  (AR 18-20.)  The ALJ also entered alternative findings at step five, finding that

17   Plaintiff can perform the requirements of other representative occupations such as maid and

18   small parts assembler.  (AR 19.)

19        This Court's review of the ALJ's decision is limited to whether the decision is in

20   accordance with the law and the findings supported by substantial evidence in the record as a

21   whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means

22   more than a scintilla, but less than a preponderance; it means such relevant evidence as a

REPORT AND RECOMMENDATION
PAGE -3

01   reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

02   F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which

03   supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

04   F.3d 947, 954 (9th Cir. 2002).

05         Plaintiff argues the ALJ erred in (1) discounting Plaintiff's credibility; (2) failing to

06   discuss Plaintiff's dependent personality disorder diagnosis at step two; (3) finding that

07   Plaintiff's impairments did not meet a listing at step three; (4) rejecting the opinions of

08   Rodger Meinz, Ph.D., and Ellen Kim, M.D., and failing to account for the limitations they

09   identified; (5) finding that Plaintiff's fast-food job constituted substantial gainful activity; and

10   (6) rejecting lay statements provided by Plaintiff's mother and family friend.   The

11   Commissioner argues that the ALJ's decision is supported by substantial evidence and free

12   from harmful error.

13                                          Credibility

14         An ALJ can discount a claimant's credibility only with clear and convincing reasons

15   to do so, absent affirmative evidence of the claimant's malingering.  *Lingenfelter v. Astrue*,

16   504 F.3d 1028, 1036 (9th Cir. 2007).  There is no evidence of malingering in this case, and

17   the ALJ provided a number of reasons to discount Plaintiff's credibility.  (AR 14-16.)  The

18   parties agree that some of the ALJ's reasons were based on inaccurate factual representations

19   regarding Plaintiff's daily activities and work history; according to Plaintiff, these reasons

20   suggest that the credibility determination as a whole is flawed, but the Commissioner

21   characterizes the inaccuracies as "minor" and asserts that the ALJ's ultimate credibility

22   finding is still supported by substantial evidence.  Dkt. 12 at 4-6; Dkt. 13 at 6-10.

REPORT AND RECOMMENDATION
PAGE -4

01       In addition to the credibility rationale predicated on factual inaccuracies, the ALJ first

02   pointed to evidence showing that Plaintiff's shoulder surgery and subsequent physical therapy

03   nearly entirely reduced her shoulder pain, with a mild flare-up occurring after swimming.

04   (AR 15.)   The ALJ found that Plaintiff's discontinuing physical therapy after October 2009

05   suggests that her shoulder pain had improved.   Though the ALJ acknowledged that Plaintiff

06   presented to a treating physician in November 2009 with shoulder pain after lifting heavy

07   objects, the ALJ interpreted the fact that Plaintiff failed to follow-up with her physician after

08   receiving a short course of medication to mean that her pain was acute (caused by the heavy

09   lifting) and resolved thereafter.  (AR 15-16.)

10       Plaintiff does not dispute that the ALJ's inferences drawn from this evidence are

11   reasonable, and does not claim that this is an invalid reason to discount credibility.  *See* Dkt.

12   14 at 6.  She instead attempts to refocus the Court's attention on the ALJ's credibility findings

13   as to mental (rather than physical) symptoms, but such an approach is inconsistent with

14   credibility findings generally: an ALJ may find a claimant not credible *in general* due to

15   reasons based on her physical allegations, mental allegations, or both.  *See Turner v. Comm'r*

16   *of Social Sec. Admin.*, 613 F.3d 1217, 1224-25 (9th Cir. 2010) (finding that discrepancies in a

17   claimant's testimony regarding physical impairments provide a valid basis to discount the

18   claimant's credibility regarding "any allegation of total disability," including mental

19   impairments).

20       The Court therefore rejects Plaintiff's suggestion that the ALJ's findings as to the

21   credibility of her physical allegations are "inapplicable" to analyzing Plaintiff's credibility as

22   to mental allegations.  *See* Dkt. 14 at 6:3-5.  That the ALJ may have relied on inaccurate

REPORT AND RECOMMENDATION
PAGE -5

01  factual understandings of Plaintiff's ability to muck out stables, the frequency with which she

02  rode horses, or her work history[2] in order to discount the credibility of other allegations does

03  not render the overall credibility determination invalid, given that the remaining reasoning

04  regarding Plaintiff's shoulder impairment is undisputedly accurate and valid.  *See Carmickle*

05  *v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding that

06  including invalid reasons to discount credibility is harmless error, if "the remaining reasoning

07  *and ultimate credibility determination* were adequately supported by substantial evidence in

08  the record") (citing *Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir.

09  2004) (emphasis in original)).

10                    Dependent Personality Disorder and Dr. Meinz's Opinion

11          Consultative examiner Rodger Meinz, Ph.D., diagnosed Plaintiff with, *inter alia*,

12  dependent personality disorder.  (AR 260, 266-67.)  The ALJ did not discuss this diagnosis at

13  step two, but mentioned it in her discussion of Dr. Meinz's opinion.  (AR 16.)  She further

14  explained why she rejected Dr. Meinz's "speculative theory of passive dependence":

15              On the whole the evidence shows an active, engaged young woman who
                remains capable of performing a multitude of tasks independently,
16              collaboratively, and otherwise despite her mild mental retardation.  That the
                claimant returned to work so shortly after her surgery and remains there, as
17              well as performing her litany of daily tasks, belies [Dr. Meinz's] speculative
                theory of passive dependence and the claimant as an "untenable prospect for
18              employment."

19              . . .

20              [Dr. Meinz] opined that the claimant's perceived passivity, apparent slow
                processing speed, and reading and arithmetic levels reduce her to an
21

22          _____
            [2] The ALJ's inaccurate understanding of the facts of this case will be discussed in other sections of this
            Report and Recommendation.

REPORT AND RECOMMENDATION
PAGE -6

01    "untenable prospect" in the "competitive marketplace," ([AR 266-67]). [Dr.
02    Meinz] apparently believes the world of fast food and unskilled manual labor
      to be ruthlessly competitive in nature, with hordes of candidates fighting each
03    other for these highly coveted positions. Dr. Meinz's opinion is not at all
      consistent with the majority of evidence presented in the file, most of all the
04    fact that the claimant has worked consistently at almost full time levels at KFC
      since April 2009, feeds and waters nine horses and other animals on the farm,
05    and independently assists her elderly grandmother on a daily basis. Dr.
      Meinz's rather damning assessment of the claimant affords her no credit for
06    her rather busy schedule and his presuppositions about the claimant's passivity
      and inability to compete are not otherwise corroborated. [Dr. Meinz's] opinion
      is granted little weight.
07

08    (AR 17.)   According to Plaintiff, the ALJ should have included dependent personality

09    disorder as a severe impairment at step two, and failed to provide specific and legitimate

10    reasons to discount Dr. Meinz's opinion.[3]  *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir.

11    1995) (requiring specific and legitimate reasons to discount a contradicted treating or

12    examining physician's opinion).

13         As both parties agree to at least some degree, the ALJ relied on inaccurate facts when

14    assessing Dr. Meinz's opinion.  Specifically, the ALJ believed that Plaintiff returned to work

15    at KFC after her shoulder injury in October 2008 and continued to work at the time of Dr.

16    Meinz's evaluation, even though the record contains no such evidence.  The wording of Dr.

17    Meinz's opinion suggests that Plaintiff's KFC job was in the past and was not ongoing (AR

18    263-64), and other evidence in the record unequivocally indicates that her KFC job did not

19    continue beyond 2008.  *See* AR 38 (Plaintiff's testimony that she stopped working at KFC

20    because she broke her shoulder), 131-33 (earnings report (dated October 13, 2010) showing

21    _____

22         [3] Though Plaintiff addressed these issues as separate assignments of error, the Court combines them
      because they are interrelated: if Dr. Meinz's opinion was properly rejected, then that rejection could justify
      omitting Dr. Meinz's dependent personality disorder diagnosis at step two.

REPORT AND RECOMMENDATION
PAGE -7

01   Plaintiff's most recent earnings in 2008), 178 (Plaintiff reporting in May 2009 that her KFC

02   job ended in October 2008), 187 (Plaintiff reporting in June 2009 that she last worked in

03   October 2008).[4]  Thus, the ALJ's interpretation of the evidence of Plaintiff's work history is

04   not reasonable, and Plaintiff's "return to work" is not a legitimate basis to discount Dr.

05   Meinz's opinions regarding the severity of her symptoms because there is no evidence that

06   Plaintiff actually did return to work.

07          The ALJ also relied on an inaccurate understanding of Plaintiff's daily activities to

08   find Dr. Meinz's opinion inconsistent.  Specifically, the ALJ stated that Plaintiff rode horses

09   two or three times a week, when she in fact testified that she rode them three or four times a

10   month.  (*Compare* AR 16 *with* AR 32.)  The ALJ also claimed that Plaintiff mucked out the

11   horse stables, but she testified that she did not muck out the stables but only added shavings.

12   (*Compare* AR 16 *with* AR 34.)

13          The ALJ arguably also overstated the extent to which Plaintiff assisted her

14   grandmother, whom she lived with: the ALJ described Plaintiff as "independently assist[ing]

15   her elderly grandmother on a daily basis" (AR 17) but the record indicates that Plaintiff made

16   her breakfast, turned on her television, and made her bed, but if her grandmother needed other

17   assistance Plaintiff simply informed her mother.  (AR 37, 155.)  Plaintiff also informs her

18   mother when her grandmother awakens, so that her mother can move her; Plaintiff stated that

19   her shoulder injury prevents her from helping move her grandmother.  (AR 205.)  Thus,

20   Plaintiff's assistance to her grandmother is not entirely as "independent" as the ALJ

21

22          [4] *See also* AR 11 (the ALJ's finding that Plaintiff had not engaged in substantial gainful activity since
       October 28, 2008).

REPORT AND RECOMMENDATION
PAGE -8

01  characterized it to be.

02      The ALJ also apparently misconstrued Dr. Meinz's opinion regarding the effect of

03  Plaintiff's passivity; the ALJ sarcastically suggested that Dr. Meinz's characterization of the

04  competitive nature of fast-food employment was inaccurate (AR 17), but missed Dr. Meinz's

05  point that Plaintiff's passivity left her open to exploitation *on the job*.  Dr. Meinz did not

06  suggest that Plaintiff would be unable to navigate a "ruthlessly competitive" application

07  process in order to obtain a "highly coveted position[]," but instead indicated that Plaintiff

08  "lacks the assertive skills to fend for herself" in a work setting, and "would need to work in

09  either a sheltered workshop or in an indigenously supported work setting, where others knew

10  to look out for her and had agreed to do so."  (AR 267.)  The ALJ dismissed Dr. Meinz's

11  concerns about Plaintiff's ability to maintain competitive employment "most of all" because

12  she had continued to work consistently at KFC since April 2009, but again, the ALJ was not

13  operating with an accurate timeline of Plaintiff's work history.

14      For these reasons, none of the ALJ's reasons for rejecting Dr. Meinz's opinion are

15  legitimate because they all depend to at least some degree on an inaccurate understanding of

16  the facts.  The ALJ found that the opinion of Suzanne Canning, M.D., more reasonably

17  matched Plaintiff's demonstrated capabilities rather than did Dr. Meinz's opinion, but it is not

18  clear that the ALJ would have so concluded if she had properly apprehended the facts.

19  Accordingly, on remand the ALJ shall reconsider Dr. Meinz's opinion and diagnoses

20  contained therein, and consider whether any adjustment to the RFC assessment is thereby

21  warranted.

22  ///

REPORT AND RECOMMENDATION
PAGE -9

01                                    <u>Step Three</u>

02          Plaintiff argues that the ALJ erred in finding that she did not meet the requirements of

03  Listing 12.05C, on the grounds that the combination of her dependent personality disorder

04  with her borderline intellectual function results imposes an additional and significant work-

05  related limitation of function.   Dkt. 12 at 8-9.   The ALJ did not account for Plaintiff's

06  dependent personality disorder diagnosis in the original decision, because she rejected Dr.

07  Meinz's opinion and diagnosis.   But because the Court should direct the ALJ to reconsider Dr.

08  Meinz's opinion (which contains the dependent personality disorder diagnosis) on remand,

09  the Court should also instruct the ALJ to reconsider, if necessary, whether Plaintiff meets the

10  requirements of Listing 12.05C in light of her reconsideration of Dr. Meinz's opinion.

11                                  <u>Dr. Kim's Opinion</u>

12          Plaintiff argues that the ALJ failed to provide specific and legitimate reasons to reject

13  the opinions of treating physician Ellen Kim, M.D.   In February 2010, Dr. Kim opined that

14  Plaintiff's "bird fancier's lung" condition and pneumonia rendered her "severely limited" for

15  approximately 50-60 days.   (AR 420-23.)   Dr. Kim also completed a "physical residual

16  functional capacity questionnaire" in November 2010, wherein she opined regarding a

17  number of physical functional capacity categories, including reaching, handling, and

18  fingering: she indicated that Plaintiff was limited to handling 60% of a workday, fingering

19  60% of a workday, and reaching 20% of a workday. (AR 427.)   Dr. Kim also completed a

20  mental evaluation in November 2010, where she addressed a number of categories of mental

21  function.   (AR 462-466.)

22          The ALJ assigned "little to no weight" to Dr. Kim's November 2010 physical residual

REPORT AND RECOMMENDATION
PAGE -10

01  functional capacity questionnaire.  (AR 17-18.)  According to the ALJ, Dr. Kim's opinions

02  are "not supported by any interpretation of the objective or subjective evidence in the file,

03  including Dr. Kim's own treatment records."[5]  (AR 18.)  This reason is specific and

04  legitimate, because Dr. Kim's treatment notes do not support her opinions regarding

05  Plaintiff's limitations: the treatment notes refer only to November 2009 pain after heavy

06  lifting, followed by Dr. Kim's recommendation to try medication and physical therapy, and if

07  those did not improve her symptoms, she was directed to return to Dr. Kim.  (AR 431.)  There

08  is no evidence that Plaintiff ever followed up with Dr. Kim, or informed her that her pain

09  persisted.   Thus, Dr. Kim's opinions regarding significant physical limitations are not

10  supported by the treatment record and the ALJ did not err in discounting the opinions on that

11  basis.

12  <center>Past Relevant Work</center>

13      The ALJ characterized Plaintiff's job at KFC as "past relevant work" and "substantial

14  gainful activity," and concluded that Plaintiff was capable of performing that job.  (AR 18.)

15  Plaintiff contends that her work at KFC does not actually indicate an ability to do "substantial

16  gainful activity" because it was performed under special conditions, namely extra training and

17  attention from her supervisor, who was a family friend.  *See* 20 C.F.R. § 404.1573 (explaining

18  how special conditions in a past job may not indicate that a claimant can do substantial

19  gainful activity).

20      The Court rejects Plaintiff's attempt to characterize the extra training that Plaintiff

21  

22  _____
    [5] The ALJ incorrectly cites AR 462-66 as Dr. Kim's treatment notes; the notes are actually found at AR 429-461.

REPORT AND RECOMMENDATION
PAGE -11

01   received from her KFC supervisor as a "special condition" as defined by 20 C.F.R. §

02   404.1573.    Even assuming that Plaintiff's supervisor's statement is credited as true, his

03   statement establishes that Plaintiff required some additional training when learning a new

04   task, but once she learned the task (within 1-2 weeks), she was "very good" at performing

05   each task.  (AR 235.)  Plaintiff also testified that aspects of her KFC job were hard at first, but

06   became easier with more experience.  (AR 42-43.)  There is no evidence of record showing

07   that Plaintiff required assistance in performing the work duties of her KFC job, but only that

08   she received additional training, and thus the ALJ did not err in characterizing Plaintiff's KFC

09   job as substantial gainful activity.  *See* 20 C.F.R. § 404.1573(c)(1) (indicating that "special

10   assistance from other employees *in performing your work*" may constitute a "special

11   condition") (emphasis added).

12                                             Lay Statements

13          The record contains two lay statements, one from Plaintiff's mother and another from

14   Plaintiff's KFC supervisor and family friend Grant Smith.  (AR 233-36.)  The ALJ gave "little

15   consideration" to Mr. Smith's statement because his description of Plaintiff's work abilities

16   was "at odds with [Plaintiff's] own explanation of her multiple job duties," and her ability to

17   return to work so shortly after her shoulder injury "is a testimony to her worth as an

18   employee." (AR 18.)  The ALJ also noted that Mr. Smith described Plaintiff as able to learn a

19   new job task within a week as consistent with her finding that she could perform an SVP-2

20   job. (*Id.*)

21          The ALJ also gave "limited consideration" to Plaintiff's mother's statement,

22   describing the diminishment of Plaintiff's ability to care for horses and drive since her

REPORT AND RECOMMENDATION
PAGE -12

01  shoulder injury.  (AR 18 (citing AR 233-34).)  The ALJ contended that Plaintiff's mother's

02  statement was contradicted by Plaintiff's self-reported "high level of daily involvement and

03  labor at the farm, as well as her extensive outside activities."  (AR 18.)  The ALJ also posited

04  that Plaintiff's mother had a motive of secondary gain in Plaintiff obtaining disability benefits

05  because Plaintiff lived with her mother.  (*Id.*)

06       According to Plaintiff, the ALJ's reasons for discounting the lay evidence were not

07  germane.  *See Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996).  The Commissioner

08  contends that the ALJ did provide germane reasons, and that any error was harmless because

09  the ALJ's RFC assessment accounts for all limitations identified in the lay statements.

10       The Court agrees with both Plaintiff and the Commissioner: the ALJ's reasons for

11  discounting the lay statements were at least in part improper, but any error was harmless.  As

12  to Mr. Smith's statement, the ALJ again reiterated her mistaken impression that Plaintiff

13  returned to work after her shoulder injury, thereby indicating her worth as an employee in

14  contradiction to Mr. Smith's description of her struggle, and this reasoning is therefore not

15  germane to Mr. Smith's statement.

16       And as to Plaintiff's mother's statement, the ALJ relied upon an overstated version of

17  the extent of Plaintiff's ability to perform farm labor and engage in "extensive outside

18  activities."  Moreover, the ALJ did not specifically assess Plaintiff's mother's motivation for

19  secondary gain: the ALJ did not explain why *Plaintiff's mother in particular* would be

20  motivated to exaggerate Plaintiff's symptoms.  The general desire that a family member may

21  feel to help a member of one's household to obtain benefits is not a germane reason to

22  discount Plaintiff's mother's statement.  *See Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir.

REPORT AND RECOMMENDATION
PAGE -13

01    2009) (holding that "friends and family members in a position to observe a claimant's

02    symptoms and daily activities are competent to testify as to her condition" (quoting *Dodrill v.*

03    *Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993))).  Without evidence that Plaintiff's mother had

04    exaggerated, the ALJ's reasoning was not sufficiently germane.

05         But, as noted by the Commissioner, neither Mr. Smith nor Plaintiff's mother

06    suggested that Plaintiff was more limited than as found by the ALJ in the RFC assessment:

07    their observations are consistent with an ability to perform simple and repetitive unskilled

08    work, and to accept instructions from supervisors and interact with co-workers and the

09    general public.  *Compare* AR 14-18 (the ALJ's RFC assessment) *with* AR 233-36 (the lay

10    statements).   Accordingly, the ALJ's error in assessing the lay statements was harmless

11    because even if the statements were credited, they would not alter the outcome of the case.

12    *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

13                      **<u>CONCLUSION</u>**

14         For the reasons set forth above, this matter should be REVERSED and REMANDED

15    for further administrative proceedings.  On remand, the ALJ shall reconsider Dr. Meinz's

16    opinion and dependent personality disorder diagnosis, and then, if necessary, reconsider

17    whether Plaintiff meets the requirements of Listing 12.05C and whether any adjustments

18    should be made to Plaintiff's RFC assessment.

19         DATED this <u>9th</u> day of April, 2013.

20

21                               _____

22                               Mary Alice Theiler
                                     United States Magistrate Judge